Ronald DEMAINE, Plaintiff–Appellant,

v.

Paul SAMUELS, Edmund Brunt, Marcia Youngquist, George Battle, Robert Carona and Peter Wack, Defendants–Appellees.

Docket No. 00–9372.

United States Court of Appeals, Second Circuit.

Feb. 15, 2002.

Jon L. Schoenhorn, Schoenhorn & Associates, Hartford, CT, for Appellant.

Robert B. Fiske III, Assistant Attorney General; Richard Blumenthal, Attorney General of Connecticut, on the brief, Hartford, CT, for Appellee.

Present POOLER, SOTOMAYOR, Circuit Judges, and KAPLAN, District Judge.*

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD-

JUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

Ronald DeMaine appeals from the September 25, 2000 decision of the United States District Court for the District of Connecticut (Arterton, *J.*) granting defendants' motion for summary judgment. For the reasons given below, we affirm.

Appellees have accepted as true the factual allegations in DeMaine's complaint for the purposes of this motion. *DeMaine v. Samuels*, 2000 WL 1658586 (D.Conn. Sept.25, 2000). DeMaine worked as a state police detective for the Connecticut Department of Public Safety in the Statewide Cooperative Crime Control Task Force ("SCCCTF"), based in New Haven. Appellees are all members of the Connecticut State Police Division of Internal Affairs ("IA").

The SCCCTF is governed by the Connecticut State Police Administration and Operations Manual ("A & O Manual"). Among it provisions, the A & O Manual provides for regular inspections of issued equipment and provides, "[t]he department reserves the right to inspect issued equipment at any other time for reasonable purposes." The A & O Manual also provides that "[t]he personal property of a trooper located on department property or within a department vehicle is subject to inspection or seizure without notice even if the trooper has locked any container or place where the property is kept." DeMaine received a copy of the A & O Manual but affirmed he was not familiar with the sections relevant to his lawsuit.

On December 1, 1998, two of the defendants, Lieutenant Edmund Brunt and

* The Honorable Lewis A. Kaplan, United States District Court Judge for the Southern District of New York, sitting by designation.

Sergeant Peter Wack, interviewed Connecticut State Police ("CSP") Sergeant Crawford as part of an ongoing IA investigation into overtime abuses by certain officers assigned the New Haven SCCCTF gang unit. The IA's authority extends to conducting administrative investigations into alleged misconduct by employees of the Department of Public Safety. It does not have the authority to investigate criminal behavior or misconduct, to make arrests, or to issue warrants. DeMaine was not a subject of the investigation because he was not working the day of the suspected overtime abuses. Crawford told Brunt it was "common knowledge" that DeMaine kept notes regarding the activities of other SCCCTF members. Brunt believed those notes would be helpful in the overtime investigation. Brunt also believed the note taking could indicate that there were other problems within the unit.

Brunt notified his commanding officer, defendant Captain Paul Samuels, of the potential notes. Brunt then instructed defendants Marcia Youngquist, George Battle and Robert Corona to go to the New Haven SCCCTF office, secure it, and await further instructions. Brunt believed it necessary to secure the office to prevent the destruction or removal of relevant evidence, and also wanted assistance at SCCCTF to help if a large amount of information was uncovered.

Once the defendants arrived at the New Haven SCCCTF office, they ordered unit members to leave the building, including DeMaine. Samuels and Battle arrived while DeMaine and other members of the unit were waiting outside the building. The two defendants ordered the SCCCTF unit members to return inside. Samuels then announced to DeMaine's co-workers that DeMaine was a witness to their alleged misconduct, and ordered DeMaine to remain inside while the other unit members again left the building. DeMaine was surrounded by defendants, all superior officers in possession of their weapons.

Samuels told DeMaine he intended to search DeMaine's desk, day planner, computer and car. DeMaine objected, telling defendants not to search his personal belongings. Samuels ordered DeMaine taken outside, where he was not permitted to either leave or move about freely. DeMaine was then ordered to return inside, where he observed Youngquist reviewing his employment evaluations and other personal items he had in his desk. DeMaine's day planner was also seized and searched on orders from Samuels.

DeMaine's car was issued to him, for his exclusive use, by the state police. As the state police encouraged DeMaine and other officers to use their state-issued vehicles for personal as well as business reasons, DeMaine had personal effects and clothing in the car. While DeMaine was outside with defendants, his car was searched. When the car search failed to turn up any notes, DeMaine was again brought inside to be questioned about notations in his day planner. After about two hours, defendants released DeMaine and left. At no time was DeMaine physically restrained or threatened with administrative action or arrest.

DeMaine brought suit in January 1999, alleging the defendants searched his personal belongings and detained him in violation of state law and his constitutional rights. Defendants moved for summary judgment, arguing neither the searches nor the seizure were illegal. In the alternative, defendants argued they were protected from suit under the doctrine of qualified immunity. The district court granted defendants' motion, finding DeMaine did not demonstrate any violation of his constitutional rights and thus it did not need to reach the issue of qualified immunity. *DeMaine*, 2000 WL 1658586, at *5. This appeal followed.

We review a district court's grant of summary judgment *de novo,* viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Hale v. Mann,* 219 F.3d 61, 66 (2d Cir.2000).

■ "Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *O'Connor v. Ortega,* 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality). Defendants concede DeMaine had a subjective expectation of privacy in the places that were searched. *DeMaine,* 2000 WL 1658586, at *5. However, defendants argue this expectation was not objectively reasonable because of the warning provided in the A & O Manual and because a state employee has a diminished expectation of privacy in his workplace.

■ The district court correctly concluded DeMaine did not have an objectively reasonable expectation of privacy in his desk or in his car. "Public employees' expectations of privacy in their offices, desks, and file cabinets ... may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor,* 480 U.S. at 717, 107 S.Ct. 1492. Further, while DeMaine's receipt of the A & O Manual does not prove he consented to the search, his receipt of the A & O Manual and the existence of the search policy do go to the issue of whether DeMaine's expectation of privacy was objectively reasonable. *Sec. and Law Enforcement Employees, Dist. Council 82 v. Carey,* 737 F.2d 187, 202 n. 23 (2d Cir. 1984). For substantially the reasons given by the district court, we agree DeMaine did not have an objectively reasonable expectation of privacy in his desk or car.

■ Assuming *arguendo* DeMaine possessed an objectively reasonable expec-

tation of privacy in his day planner, the district court correctly determined his Fourth Amendment rights were not violated. The defendants' actions are properly evaluated under the more lenient reasonableness standard, instead of a probable cause standard, because the search took place during an internal, work-related investigation. "The crucial question is not whether the investigation involves actions arising out of a police officer's duties, but whether the investigation's objective is to discipline the officer within the department or to seek criminal prosecution." *Cerrone v. Brown,* 246 F.3d 194, 200 (2d Cir.2001).

■ Here, the evidence shows the purpose of the investigation was to discipline officers within the department, as IA had no authority to pursue criminal investigations. When examining a search under the reasonableness standard, we look to see that "both the inception and the scope of the intrusion" are reasonable. *O'Connor,* 480 U.S. at 726, 107 S.Ct. 1492. A search is reasonable at its inception when there are "reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct" and reasonable in scope when the "measures adopted are reasonably related to the objectives of the search and not excessivley intrusive in light of the nature of the" alleged misconduct. *Id.* at 426–27, 107 S.Ct. 1492 (citation and quotation omitted). The defendants had reason to believe DeMaine had notes regarding his coworkers based on their interviews with CSP Troopers with knowledge of the notetaking. If such notes existed, they would clearly be relevant to the alleged overtime abuses. The search was also reasonable in its scope: defendants were reasonable in their belief that DeMaine would keep such notes in his day planner, a logical place for someone to record such information. While DeMaine insisted the information in his day planner was personal, defendants' decision to search the day

planner by leafing through it does not make the search unreasonable.

 Further, the district court correctly determined that the seizure of DeMaine within the New Haven SCCCTF office and just outside for the two hours it took to conduct the search was reasonable. "We have permitted police seizures of police officers based upon less than probable cause in connection with internal administrative or disciplinary proceedings." *Cerrone*, 246 F.3d at 200. As described above, the defendants reasonably believed DeMaine had information pertinent to the ongoing overtime investigation. Further, the circumstances of his seizure—for two hours while the search was conducted, during a period when DeMaine was on duty and thus compensated for his time—was neither overly intrusive nor unreasonable.

We have examined the remainder of DeMaine's claims and find them without merit.