RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0204p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

KATHRYN KEYS,

*Plaintiff-Appellant,*

v.

No. 11-5472

HUMANA, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:09-CV-834—Charles R. Simpson, III, District Judge.

Decided and Filed: July 2, 2012

Before: COOK and STRANCH, Circuit Judges; LAWSON, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** David A. Branch, LAW OFFICE OF DAVID A. BRANCH & ASSOCIATES, PLLC, Washington, D.C., for Appellant. Craig Peter Siegenthaler, Cynthis Blevins Doll, William C. Vail, Jr., FISHER & PHILLIPS LLP, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

JANE B. STRANCH, Circuit Judge. Plaintiff-Appellant Kathryn Keys filed a class-action lawsuit against her former employer Defendant-Appellee Humana, Inc., alleging claims of race discrimination under the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

district court granted Humana's Motion to Dismiss Keys's Amended Complaint after finding that Keys failed to plead a prima facie case of race discrimination under the burden-shifting framework of *McDonnell Douglas*. This appeal followed. Because the *McDonnell Douglas* framework does not apply at the pleading stage and for the following reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Because this appeal arises from a decision at the motion to dismiss stage, we draw the facts from the allegations of the Amended Complaint. Kathryn Keys, an African American female, began working for Humana in March 2005. Keys was recruited from Washington, D.C., interviewed for a Director position, and offered the position on the day of her interview. She was part of a group of directors being hired to work for Anita Teets, a Caucasian female. Keys was the only African American Director on Teets's new management team. When Keys received her offer letter, she was offered a position with the title of "Consultant Leader," instead of Director. Caucasian candidates who accepted Director positions under Teets received the correct title. Following Keys's complaints, her title ultimately was corrected to state the position she had been offered and had accepted. Caucasian Directors who reported to Teets were also given a compensation plan that included a Management Incentive Program ("MIP") of 25%, while Keys was initially given only a MIP of 15%. When she began employment, Keys reported to a Vice President and supervised ten to twelve employees.

In October 2005, Teets announced that James Thomas, a Caucasian male, would be a support person to all of the Directors. Thomas immediately began focusing on accounts managed by Keys and was later assigned her duties. Around this time, Keys was no longer invited to the weekly sales meetings organized by the Vice President even though the other Directors, all Caucasian, were invited.

In February 2006, Humana reorganized its management staff and removed Keys from her position, placing her in the role of Individual Contributor. None of the Caucasian Directors who reported to Teets or any other Vice President were removed from their Director positions in this reorganization. In her new role, Keys no longer supervised ten to twelve employees and she was required to report to a Director, a position she previously held, rather than to a Vice President. In August 2006, Keys was placed on a performance improvement plan despite the fact that she met her performance expectations. The Amended Complaint alleges that "[s]imilarly situated Caucasian employees at the director or individual contributor level" were not placed on performance improvement plans; however, around the same time, ten to twelve African American manager-level employees were placed on performance plans and then forced to resign or were terminated.

In October 2006, Keys filed a complaint with the Associate Relations Department alleging she was not being treated fairly due to her race and/or gender. Humana began an investigation, but concluded that Keys's complaint was unfounded. Keys stayed in her Individual Contributor position and remained under the performance plan. In June 2007, Keys requested an interim assessment to counter the 2006 performance assessment and, in October 2007, she received a favorable written assessment.

In January 2008, Keys's management team reorganized again and another management level was created above her position. Keys then reported to Jerry Brewer, a lower-level Caucasian director, and occupied a position two levels down from the position into which Humana had originally hired her. On June 20, 2008, Humana terminated Keys's employment, citing the 2006 negative performance assessment but ignoring the 2007 favorable performance appraisal. No Caucasian Directors or Individual Contributors were terminated at that time. The Amended Complaint alleges Keys's termination was consistent with the manner in which Humana terminated or forced the resignation of several African American professional staff members, a number of whom were named. The Amended Complaint also alleges several specific instances throughout her employment when Caucasian employees of Humana acted disrespectfully

toward Keys and humiliated her. On each of these occasions, Keys reported the behavior to her supervisor and no action was taken.

On October 15, 2009, Keys filed this class-action suit against Humana alleging race discrimination claims under both the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. On January 4, 2010, Humana moved to dismiss Keys's Amended Complaint, asserting Keys had not alleged facts sufficient to establish a prima facie case of intentional discrimination. The district court agreed. Specifically, the district court held Keys failed to allege plausibly that she was treated differently than similarly situated nonprotected employees. Because the court found Keys had not plausibly alleged her individual claims of discrimination, the court also dismissed her class-action claims. On appeal, Keys challenges the district court's requirement that the complaint must allege a prima facie case as articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and its progeny. Alternatively, she challenges the district court's determination that she has not satisfied that standard.

## II. ANALYSIS

### A.      Standard of Review

We review a district court's grant of a motion to dismiss de novo. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009). We must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[] factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.      Applying *McDonnell Douglas* at the Pleading Stage**

*1.      The District Court Decision*

Humana argued in its Motion to Dismiss, and the district court found, that Keys did not state a claim of race discrimination under either § 1981 or Title VII because the Amended Complaint failed to allege facts that plausibly establish a prima facie case of race discrimination.  The district court relied upon our decision in *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (2008), which applied the burden-shifting framework of *McDonnell Douglas* to review of a district court's grant of *summary judgment* in a claim of race discrimination based on circumstantial evidence.  The district court recited the components of a prima facie case under *McDonnell Douglas* that *White* had applied on summary judgment, noting a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees.  *White*, 533 F.3d at 391.  The district court then held that the Amended Complaint failed to allege sufficiently that Keys was treated differently than similarly situated nonprotected employees.  Specifically, the court noted Keys's failure to allege facts suggesting that

> the white employees to whom Keys would like the court to compare her were performing similar tasks to the same standards as she.  Productivity and competence being relevant factors in making employment decisions, the absence of any such allegations from the complaint prevents the court from inferring that the employees who were not terminated were similarly situated to the plaintiff.

*Keys v. Humana, Inc.*, No. 3:09-CV-834-S, 2010 WL 2961186, at *3 (W.D. Ky. July 26, 2010).

### 2.        *Governing Supreme Court and Sixth Circuit Precedent*

The district court's requirement that Keys's complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent.  In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the prima facie case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement.  534 U.S. 506, 510 (2002).  As the Court reasoned, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case."  *Id.* at 511.  The Court explained that the precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation.  *Id.* at 512.  Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims.  *Id.* at 511-12.  The Supreme Court concluded that the ordinary rules of notice pleading apply and upheld the complaint because it gave "fair notice" of the basis of the plaintiff's claims.  *Id.* at 514.

The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*.  *Twombly* distinguished *Swierkiewicz*, explaining that the prior case "did not change the law of pleading," but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage "was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (explaining that a plaintiff need not allege "'specific facts' beyond those necessary to state [her] claim and the grounds showing entitlement to relief").  Since *Twombly* and *Iqbal*, we have also recognized the continuing viability of *Swierkiewicz*'s holding.  *See, e.g.*, *Pedreira*, 579 F.3d at 728 (holding that the *McDonnell Douglas* prima facie case is not a pleading requirement and that "the ordinary rules for assessing the sufficiency of a complaint apply"); *Back v. Hall*, 537 F.3d 552, 558 (2008) (same).  Recently, in *HDC, LLC v. City of Ann Arbor*, we again recognized the applicability of *Swierkiewicz*'s holding and further noted that it would be "inaccurate to read [*Twombly*

and *Iqbal*] so narrowly as to be the death of notice pleading and we recognize the continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8." 675 F.3d 608, 614 (6th Cir. 2012). Therefore, it was error for the district court to require Keys to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss.

Still, the Supreme Court established a "plausibility" standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims. *HDC, LLC*, 675 F.3d at 612-13 (affirming dismissal of Fair Housing Act claim where alleged facts did not support plausible inference of intentional discrimination); *Pedreira*, 579 F.3d at 728 (affirming dismissal of religious discrimination claim where plaintiff failed to allege facts plausibly linking her termination to religious beliefs). Thus, although the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that Humana "discriminate[d] against [Keys] with respect to [her] compensation, terms, conditions, or privileges of employment, *because of* [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added); *see Barrett v. Whirlpool Corp*, 556 F.3d 502, 512 (6th Cir. 2009) ("[W]e review § 1981 claims under the same standard as Title VII claims."). According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

**C.     Sufficiency of Keys's Individual Allegations**

Keys's Amended Complaint tenders more than the "'naked assertion[s]' devoid of 'further factual enhancement'" that *Twombly* and *Iqbal* prohibit. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Amended Complaint contains allegations that are neither speculative nor conclusory; it alleges facts that easily state a plausible claim. The Amended Complaint alleges Humana had a pattern or practice

of discrimination against African American managers and professional staff in hiring, compensation, promotion, discipline, and termination. It details several specific events in each of those employment-action categories where Keys alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that Keys and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances. These factual allegations are at least as detailed, if not more so, than those the Supreme Court found "easily satisfie[d] the requirements of Rule 8(a)" in *Swierkiewicz*. *See* 534 U.S. at 514 ("His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.").

### D.     Keys's Class-Action Claims

Because we find the district court erroneously dismissed Keys's individual claims of discrimination, it was error to dismiss her class-action claims on the basis that she was not a member of the alleged class. Keys adequately alleged the components of her claim and of her class action case, both of which now may be defined further through the discovery process. We express no opinion on whether the class ought to be certified.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's dismissal of Keys's Amended Complaint and **REMAND** for further proceedings consistent with this opinion.