ALICE M. BATCHELDER, Circuit Judge,
dissenting.
Given the amount of ink that has been spilled in this case, it is difficult to determine which opinion controls on which point. For the sake of ease, I will refer to Chief Judge Cole’s opinion as the majority opinion. Although I agree with the majority that there was no Fourth Amendment violation in the search of James’s office and that James has waived her supplemental jurisdiction argument, I respectfully dissent from the remainder of the opinion. The majority opinion’s Fourth Amendment analysis regarding the safe rests on the dubious assumption that a safe is more analogous to a portable, lightweight briefcase or piece of luggage than the more *468 permanent office fixtures of a desk or filing cabinet. Because a safe should be analyzed as part of the “workplace context,” and because the search here was both justified at its inception and reasonable in its scope, the district court properly dismissed James’s Fourth Amendment claim. Further, although the majority is correct to point out that James need not plead a prima facie case of discrimination, she still must plead “enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). She has not met even this liberal pleading standard and thus the district court did not err in dismissing her Fourteenth Amendment claim either. I would affirm the district court’s opinion in its entirety.
I.
The majority’s Fourth Amendment analysis rests on two separate misapprehensions of O’Connor v. Ortega, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). First, the majority incorrectly places the safe outside of both the workplace context and, by extrapolation, O’Connor’s reasonableness inquiry for workplace searches. Second, assuming arguendo that the safe is part of the workplace context, the majority analyzes the search under the O’Connor framework but incorrectly characterizes it as unreasonable in its scope.
A.
Whether or not an item is part of the “workplace context” is a threshold inquiry that determines whether an individual has a reasonable expectation of privacy in that item. See O’Connor, 480 U.S. at 715, 107 S.Ct. 1492 (“Because the reasonableness of an expectation of privacy, as well as the appropriate standard for a search, is understood to differ according to context, it is essential first to delineate the boundaries of the workplace context.”).[1] The O’Connor Court contrasted the workplace context, which includes hallways, cafeterias, offices, desks, and filing cabinets with things that merely “pass[] through the confines of the business address” such as closed luggage, handbags, or briefcases. Id. at 716, 107 S.Ct. 1492. Purely as an intuitive matter, the most relevant factor for distinguishing between the two groups is the portable nature of the item. Desks and filing cabinets are fixtures of an office whereas handbags and briefcases can rightly be said to “pass[ ] through the confines of the business address,” usually on a daily basis. Indeed, the items the Court placed outside the workplace context are inherently transient. See id. (“An employee may bring closed luggage to the office prior to leaving on a trip, or a handbag or briefcase each workday.” (emphasis added)). By contrast, few employees, if any, lug a safe to and from work each day.
In the majority’s opinion, however, a safe is analogous to a piece of closed personal luggage or a briefcase. This defies reason. The majority emphasizes that James purchased the safe herself and kept it locked. But in Gossmeyer v. McDonald, 128 F.3d 481 (7th Cir.1997), a case on which the majority relies, the plaintiff similarly contended that she had an expectation of privacy in a filing cabinet and a storage unit because she had bought them herself and kept them locked. Id. at 490. The court rejected this argument, declining “to find an expectation of privacy in the cabinets simply because [plaintiff] *469 bought them herself.” Id. Next, the majority emphasizes that James was not on notice that her safe could be searched. Neither wás the plaintiff in Gossmeyer, and nowhere in O’Connor is such a notification required.to keep a stationary item in the workplace context. The majority has invented this requirement out of whole cloth. Finally, the majority points out that James used the safe to store personal items. The Court in O’Connor, however, noted that desks and filing cabinets “remain part of the workplace context even if the employee has placed personal items in them.” 480 U.S. at 716, 107 S.Ct. 1492. Thus, the contents of an item in question are wholly irrelevant; the reasonable-expectation-of-privacy determination rests on the nature of the container.
“The workplace includes those areas and items that are related to work and are generally within the employer’s control.” Id. at 715, 107 S.Ct. 1492. A piece of luggage, a handbag, or a briefcase remains outside the employer’s control for purposes of the Fourth Amendment because it accompanies an employee to and from work. The safe, like a desk or a filing cabinet, is immobile and thus becomes part of the workplace. If James had wanted to shield any personal belongings in her government-provided office, she could have heeded the Court’s advice: “The employee may avoid exposing personal belongings at work by simply leaving them at home.” Id. at 725, 107 S.Ct. 1492. Instead, she brought the safe into her office and used it to hold documents. It thus is part of the workplace context, and properly falls within O’Connor’s reasonableness analysis. The majority incorrectly places the safe outside of this framework.
B.
Having determined that the safe falls outside the workplace context, the majority then assumes arguendo that the reasonableness inquiry applies and analyzes the search under that rubric. The majority again comes to the wrong result. While I agree with the majority that the search was clearly justified at its inception, I believe it erred by holding that the search was unreasonable in its scope.
“Under this reasonableness - standard, both the inception and scope of the intrusion must be reasonable....” O’Connor, 480 U.S. at 726, 107 S.Ct. 1492. The majority believes the search of James’s office was reasonable in its scope because “given the subject matter of the allegations against James — including employment irregularities and misappropriation of funds — a thorough search of areas that might contain financial, and employment records” was reasonable. Maj. Op. 459. It is difficult to see why this same reasoning would not also apply to James’s safe. It is not unreasonable for the defendants to have believed that the safe would also hold financial and employment records, exactly the type of documents kept in safes.
The majority argues that the defendants were unlikely to find evidence of work-related misconduct in the safe because James had purchased the safe, maintained it for her personal use, and kept it secured. None of these factors are legally relevant as to whether the scope of the search was unreasonable. In Gossmeyer, the court found the search of the plaintiffs desk and filing cabinet reasonable in scope because “[t]he targets of the search were those places where [plaintiff] would likely store the alleged pornographic pictures.” 128 F.3d at 491. Similarly, the defendants here reasonably believed the safe could contain financial or employment records. That James told the defendants the safe held only personal documents is irrelevant, because, despite her claim, a safe would be a logical place for someone to keep such records. See Demaine v. Samuels, 29 *470 Fed.Appx. 671, 675 (2d Cir.2002) (holding that a search of plaintiffs day planner for notes was reasonable because, despite plaintiffs protest that its use was personal, a day planner is “a logical place for someone to record such information”).
The defendants were looking for evidence of financial and employment improprieties. The majority concedes that James’s office would be a natural place to look. Maj. Op. 458. What the majority ignores, however, is that a safe in the office would be just as natural, despite its ownership status or alleged contents. It was reasonable for the defendants to search the safe for financial and employment records. For that reason, I must dissent from the majority’s Fourth Amendment holding as it pertains to the safe.
II.
As for the Fourteenth Amendment claim, even though the Supreme Court held in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), that McDonnell Douglas sets an evidentiary standard, not a pleading requirement, it made clear in Twombly that a discrimination plaintiff must still plead “enough facts to state a claim to relief that is plausible on its face.” 550 U.S. at 569-70, 127 S.Ct. 1955. “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
The majority relies on two cases to prove that James pleaded sufficient factual content for the court to draw a reasonable inference of racial discrimination: Swierkiewicz itself and Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir.2012). The plaintiffs in both of those cases, however, pleaded 'significantly more factual detail than James did here. In Swierkiewicz, the plaintiff alleged that he was demoted and replaced by a younger employee of the employer’s nationality; that that employee was inexperienced; that the purpose of promoting the younger employee was to “energize” the department; that the employer excluded plaintiff from business decisions and meetings; that plaintiff sent a memo to the employer outlining his grievances and tried to meet with the employer to discuss his discontent; and that plaintiff was fired. 534 U.S. at 508-09, 122 S.Ct. 992. Similarly, in Keys, the plaintiff alleged that she was hired as a Director but was given the title of Consultant Leader instead of Director; that Caucasian candidates who accepted Director positions were given the correct title; that Caucasian Directors were given an incentive plan of twenty-five percent while plaintiff was only given fifteen percent; that plaintiff was excluded from weekly sales meetings when all Caucasian Directors were invited; that her employer reorganized its management staff and removed only plaintiff from her role; that plaintiff was placed on a performance improvement plan despite the fact that she met her performance expectations while “[similarly situated Caucasian employees” were not placed on such plans; and that she was eventually terminated. 684 F.3d at 607 (internal quotation marks omitted). Both the Supreme Court and this court found that these allegations easily satisfied the pleading requirements. See Swierkiewicz, 534 U.S. at 507, 122 S.Ct. 992; Keys, 684 F.3d at 610.
James has not pleaded enough factual detail to satisfy even liberal pleading requirements. James made a broad and conclusory allegation that the defendants violated her right to equal protection “by prosecuting a complaint to remove her from the bench under circumstances that they routinely decline to pursue with matters involving respondents who are not African-American.” She then described *471 five Caucasian judges who abused their power, including such improprieties as using court funds to pay off a court employee. Despite the majority’s contention that this level of detail is enough because a court could draw “a reasonable inference of discrimination because she points to specific instances of abuse of judicial power by white judges,” Maj. Op. 461, these facts do not make her claim plausible.[2]
A case from our sister circuit, Coleman v. Maryland Court of Appeals, 626 F.3d 187 (4th Cir.2010), is instructive. In Coleman, a plaintiffs conelusory allegation that he was treated differently as a result of his race was insufficient — even where he had identified an alleged comparator — because no factual allegations plausibly suggested the comparator was similarly situated. The complaint in that case alleged that the plaintiff, who was terminated for allegations of steering contracts to vendors in which he had an interest, “was treated differently as a result of his race than whites” and specifically identified another employee as a white person who was not disciplined despite also having “outside business involvements.” Id. at 191 (internal quotation marks omitted). The court held, however, that the complaint “fails to establish a plausible basis for believing [comparators] were actually similarly situated or that race was the true basis for [plaintiffs] termination.” Id. (footnote omitted). Further, the court criticized the complaint for failing to allege “that any impropriety was comparable to the acts [plaintiff] was alleged to have committed.” Id. Absent such support,, the court concluded that the allegations of race discrimination were speculative. Id.
James is not required to plead the four elements of McDonnell Douglas. That much is clear. However, “broad and con-elusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims.” HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 613 (6th Cir.2012). Unlike the plaintiffs in Swierkiew-icz and Keys, who pleaded multiple facts that could form the basis for a plausible allegation of discrimination, James simply pointed to five Caucasian judges who were not investigated despite their improprieties. Although the majority accepts James’s invitation to raise the level of generality needed for a valid discrimination claim, even a cursory look at her complaint shows that her conduct does not compare to that of these other judges. Other than the fact that James is African-American and the five judges are Caucasian, her pleaded facts show no plausible basis for believing that race was the true basis for the JTC’s investigation of her. ' And while the majority is correct to note that James is not required to demonstrate that she and other judges engaged in relevantly similar conduct at this stage in the litigation, she must plead enough facts to “raise a right to relief above the speculative level.” Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
I respectfully dissent.

. Curiously, the majority analyzes whether or not the safe is part of the workplace context in its analysis of the reasonableness of the search, after already having determined that James had a reasonable expectation of privacy in her office and her desk.

. In an attempt to analogize to Swierkiewicz and Keys, the majority notes that James, along with discussing the judges who abused their power, also details "specific adverse employment actions" taken against her by the JTC. Maj. Op. 461. The only “specific adverse employment action” the majority highlights, however, is the JTC’s investigation. This court has held that an internal investigation of an employee is not an adverse employment action. See Kuhn v. Washtenaw Cnty., 709 F.3d 612, 625 (6th Cir.2013). The majority’s, and James’s, focus is misplaced.