NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0546n.06

No. 19-5034

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 28, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MINNIE SPANGLER, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| EAST KENTUCKY POWER | ) | THE EASTERN DISTRICT OF |
| COOPERATIVE, INC., | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

_____/

Before: GUY, BUSH, and MURPHY, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Minnie Spangler appeals the dismissal of her claim that she was discharged in violation of § 510 of ERISA. *See* 29 U.S.C. § 1140. Because Spangler failed to plausibly allege that her employer East Kentucky Power Cooperative (EKPC) terminated her employment for the purpose of interfering with the attainment of her rights as a beneficiary to her deceased husband's benefits, we affirm.

**I.**

Spangler filed suit in state court, and EKPC removed the action based on Spangler's representation that her wrongful discharge claims rested on a violation of § 510 of ERISA. The First Amended Complaint followed, which reasserted Spangler's state-law claim of wrongful discharge (Count 1) and alleged that EKPC's conduct violated § 510 of ERISA (Count 2). EKPC

moved to dismiss both counts for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Spangler's response explained that her employment "was terminated not for exercising her own right, but for attempting to attain important information regarding [her deceased husband] Danny's benefits, which are governed by the Employee Retirement Income Security Act." The district court granted EKPC's motion in full, but only the ERISA claim is at issue on appeal.[1]

## II.

A district court's dismissal for failure to state a claim is reviewed de novo. *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016). In doing so, we take the well-pleaded facts as true but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In relevant part, § 510 of ERISA makes it unlawful to "discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which [she] may become entitled under [an employee benefit] plan." 29 U.S.C. § 1140. That is, a plaintiff must prove that an adverse action—here the discharge—was taken "with the specific intent of violating ERISA." *Roush v. Weastec, Inc.*, 96 F.3d 840, 845 (6th

---

[1]Spangler expressly abandoned any challenge to the dismissal of her wrongful discharge claim, which the district court found was precluded because ERISA provided the public policy underlying the claim and also specified the civil remedies for such a violation. *See Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 420 (Ky. 2010); *Harvey v. I.T.W. Inc.*, 672 F. Supp. 973, 976 (W.D. Ky. 1987).

Cir. 1996); *see also Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 612-13 (6th Cir. 2009). "The plaintiff is not required to show that the employer's sole purpose in discharging him was to interfere with his [ERISA] benefits, but rather that it was a 'motivating factor' in the decision." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). That is, at the pleading stage, Spangler "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that EKPC discharged Spangler with intent to interfere with the attainment of her rights as a beneficiary to her husband's benefits. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).[2]

Because this appeal turns on the sufficiency of the factual allegations in the First Amended Complaint, we begin there. Spangler alleged that she and her husband were both full-time employees of EKPC until her husband's death on October 11, 2014. After a brief period of bereavement, Spangler returned to work at EKPC. Spangler alleged generally that she sought information about spousal death benefits and that she was subjected to unspecified verbal harassment in two meetings, the second of which culminated in her alleged discharge. Specifically, Spangler alleged:

- "While attempting to navigate EKPC's complicated spousal death benefit options, Minnie sought the advice of an EKPC Human Resources employee and EKPC's General Counsel (the 'General Counsel')."

---

[2]Spangler emphasizes that in the absence of direct evidence, she may prove her claim through circumstantial evidence using the burden-shifting framework of *McDonnell Douglas*. *See Crawford*, 560 F.3d at 613-14 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Humphreys*, 966 F.2d at 1043. Under that burden-shifting framework, the plaintiff must first make a prima facie showing of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Crawford*, 560 F.3d at 613 (quoting *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)). But the prima facie case is an evidentiary standard—not a pleading standard. *Keys*, 684 F.3d at 609 (recognizing that *Twombly* and *Iqbal* did not alter the holding in *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002)).

- "[O]n or about December 8, 2014, during a meeting in the General Counsel's office, Minnie was verbally assailed, harassed and physically threatened by an EKPC employee ('the incident')."

- "Shortly after the incident, Minnie began to experience severe chest pains and was later transported to the hospital . . . [and was] advised to take a leave of absence from EKPC."

- "Upon her return to EKPC [on or about January 29, 2015], Minnie was unable to acquire information from EKPC representatives regarding the supplemental death benefits arising from Danny's passing, and therefore directly contacted a National Rural Electric Cooperative Association ('NRECA') representative, the organization responsible for administering EKPC's employee retirement plans, for assistance in answering her questions."

- "On or about May 15, 2015, following her attempted contact with the NRECA representative, Minnie met with an EKPC Human Resources employee whom was presumably disturbed by Minnie's decision to seek guidance directly from NRECA (the 'meeting')."

- "Upon information and belief, during the meeting the EKPC employee verbally assailed and harassed Minnie and specifically directed her to grab her purse and go home (the 'termination')."

- "Following her termination, Minnie immediately left the EKPC premises and sent an email to her immediate supervisor advising him she would not return to EKPC."

Offering no other factual allegations, Spangler asserted that "the conduct of EKPC, set forth above, violated the express terms of ERISA, specifically, 29 U.S.C. § 1140 (commonly referred to as § 510 of ERISA)." In dismissing this claim, the district court found Spangler had failed to plead facts that plausibly alleged that EKPC engaged in prohibited conduct "with the specific intent to violate ERISA."

Reviewing the complaint de novo, the question is whether the facts, if taken as true, permit an inference that EKPC discharged Spangler for the purpose of interfering with her rights to her husband's benefits. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505-06 (6th Cir. 2013); *Bailey v. Enrichment Corp.*, 530 F. App'x 471, 477-78 (6th Cir. 2013). Spangler argues on appeal that an inference of improper motivation may be drawn solely based on "temporal proximity"—namely, that she was discharged (actually or constructively) during a

meeting about spousal benefits shortly after having contacted the NRECA about those benefits. Spangler relies heavily on *Humphreys* and *Ameritech*, but neither decision supports an inference in this case.

To be sure, in *Ameritech* we said that temporal proximity between an employer's actions and the date when the employee would have become eligible for benefits can, in some cases, "support an inference that the adverse actions were taken with the intent of interfering with future [ERISA] benefits." *Ameritech*, 129 F.3d at 865. The proximity in that case was between the employer's decisions to retroactively deny the employee six weeks of short-term disability benefits and then discharge the employee one week before he would have qualified for long-term disability benefits if he had continued to receive those short-term disability benefits. *Id*. at 864. Summary judgment was nonetheless proper because the employee failed to show that he continued to qualify for short-term disability benefits, which meant that he could not establish that he might have received long-term disability benefits if he had not been discharged. *Id*. at 866. In *Humphreys*, the employee claimed that he was discharged two months before his pension would have vested at substantial cost to his employer. 966 F.2d at 1043-44. This court found that "the proximity to vesting provides at least some inference of intentional, prohibited activity." *Id*. at 1044.

There were no facts from which to infer why Spangler was sent home. There was no claim that her discharge prevented her from receiving spousal death benefits to which she otherwise would have become entitled. Nor did she allege that her rights to spousal death benefits depended on her own employment. The allegation that she was discharged during a meeting about her husband's benefits shortly after having attempted to contact the NRECA about those benefits does not give rise to an inference that Spangler's employment was terminated with the intent to interfere with her rights as a beneficiary to her deceased husband's benefits. *See Iqbal*, 556 U.S. at 678

("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). The district court did not err in dismissing this claim.

**AFFIRMED**.