NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0163n.06

No. 20–3425

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Mar 25, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ROYA MASAEBI, | ) | |
| | ) | |
| Plaintiff – Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ARBY'S CORPORATION, | ) | |
| | ) | |
| Defendant – Appellee. | ) | |

**BEFORE:  BATCHELDER, WHITE, and BUSH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  In this diversity case removed from the Ohio Court of Common Pleas, plaintiff Roya Masaebi appeals the district court's dismissal of her complaint against Arby's Restaurant Group, Inc. ("Arby's").  We AFFIRM.

**I.**

Masaebi was born and raised in Iran.  On June 12, 2018, Masaebi interviewed for an Arby's management position with Todd Richary, an Arby's supervisor, and expressed her goal of using her master's degree in business administration to apply for a corporate position at Arby's after serving for two years as a general manager in an Arby's restaurant.  Masaebi had a follow-up interview with Andre Irvin, the director of operations, which went well.  On June 21, 2018, Richary offered Masaebi a general management position starting at $57,000, in addition to a benefits package that would go into effect sixty days after starting her position.  Masaebi's salary was set

higher than an average entry-level manager due to her master's degree and several years of prior management experience.

Masaebi began training with certified training manager Randall Sneddon and general manager Kim Edwards on July 16, 2018 at an Arby's in Chillicothe, Ohio. Masaebi had been told she would complete her training closer to her home at the Pickerington location, but because there were no openings there she was instead sent to Chillicothe. Masaebi explained to Richary that training in Chillicothe was a problem for her because it was over an hour drive from her home, and she was concerned that leaving her son home alone for several hours at night could make her vulnerable in a custody battle with her ex-husband. On August 8, Masaebi was told by Arby's training managers Brynn Schnell and Beth Campbell that she would be transferred to the Pickerington location, which was managed by Tiffany Eiselben. Masaebi continued her training in Pickerington soon thereafter.

According to Masaebi, throughout her short time at Arby's, Schnell expressed her dissatisfaction that Masaebi had a higher-than-normal starting salary and was planning to apply for a corporate position after two years.

Entry-level managers are required to complete a series of written tests during their training. English is Masaebi's third language and she requires near silence during test tasking. She informed Arby's management of this need at the outset of her training, and no one raised an issue. When Masaebi raised her concern about testing conditions, Schnell told her that "some people take longer to learn" and assured Masaebi that even if she did not pass all the required tests after six months at Arby's, she would simply be moved down to an assistant-manager position until she successfully completed all the necessary testing. Compl., R. 1-2 at PID 16.

Despite Arby's knowledge of Masaebi's request for silent testing conditions, she was forced to take the first test in an area where other employees were located, and she was distracted throughout testing by employee conversations, cell phone calls, and other interruptions. Masaebi did not pass the test the first time, but she passed on her second attempt, despite distractions. She passed her seven-week written test as well. She was also making steady progress in her training.

On August 17, 2018, while managing a shift by herself at the Pickerington location, she found a feather in a ham slider sandwich that an employee was about to serve to a customer. She notified him, and he removed the ham portion of the sandwich with the feather but served the remainder of the sandwich to the customer. Masaebi believed that serving the sandwich was a breach of company policy, a breach of customer trust, and a violation of state and local law. She took a photograph of the feather on the ham and showed it to Schnell. Schnell did not appear disturbed, and to Masaebi's knowledge, the employee who served the sandwich was not disciplined.

On August 21, 2018, Masaebi went to Ohio Health for routine bloodwork. While chatting with a nurse she knew from previous visits, Masaebi mentioned the incident with the ham-slider-sandwich. On September 5, 2018, Masaebi left work early to attend to a family matter, after receiving permission to do so. Schnell called Masaebi later that day to check on her, and she assured Masaebi that leaving work due to a family emergency would not be held against her.

On September 14, 2018, Masaebi had a meeting with Schnell and Campbell. Schnell told Masaebi she had a "funny story" and proceeded to report that she had gone for blood work at Ohio Health and was told by her nurse that another Arby's employee had mentioned a feather being in a ham sandwich. Compl. at PID 18. Then Schnell and Campbell discussed Masaebi's test results and told Masaebi her employment was being terminated. Masaebi had never been disciplined prior

to the termination and asserts that her abrupt firing violated Arby's established progressive discipline policy. After her termination, several Arby's supervisors told Masaebi that they did not know of anyone having been terminated for the "stated reasons" or as abruptly as Masaebi.

Count I of Masaebi's complaint alleges discrimination and retaliation in violation of Ohio Rev. Code § 4112. As part of Count I, Masaebi alleges that she was terminated, at least in part, based on national-origin discrimination. She also claims that reporting the ham-slider-sandwich incident to her supervisors was a protected activity, and that Schnell retaliated against her for engaging in that protected activity. Count II of Masaebi's complaint alleges retaliation under Ohio Rev. Code § 4113.52. As part of Count II, Masaebi claims that she took the actions required to report a violation of state law, specifically the serving of a tainted sandwich, to her supervisor; that no one reported back to Masaebi regarding her report; and that she was terminated soon thereafter under "dubious circumstances." Masaebi claims that her termination was retaliation for engaging in protected activity. As part of Count III, Masaebi claims that the actions of Arby's, carried out by Schnell, were extreme and outrageous, caused Masaebi severe emotional distress and psychological harm, and that Arby's either intended to cause Masaebi emotional harm, or knew or should have known that serious emotional distress would result.

Arby's moved to dismiss all three of Masaebi's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. Masaebi responded, arguing that she had alleged sufficient facts to proceed on Count I, though she conceded that her claims of retaliation based on the "ham slider incident" could not support a claim under Ohio Rev. Code § 4112, and therefore requested leave to amend her complaint to incorporate allegations regarding her language barrier and testing conditions that were included in the facts section of the complaint into the section specifically relating to Count I. Masaebi conceded that her claim under

Ohio Rev. Code § 4113.52, alleged in Count II, was time barred, but she requested leave to amend her complaint to include an alternative claim for retaliation in violation of Ohio common law. Masaebi abandoned her claim for intentional infliction of emotional distress (Count III).

The district court granted Arby's motion to dismiss all three claims and denied leave to amend the complaint. The district court found that Masaebi's discrimination claim under Count I "is devoid of any facts which could produce an inference that Defendant unlawfully considered Plaintiff's national origin when conducting her training, administering her tests, or terminating her." *Masaebi v. Arby's Corp.*, No. 2:19-cv-5271, 2020 WL 1275724, at *4 (S.D. Ohio Mar. 17, 2020). The district court also found that "the [c]omplaint contains no facts which could support an inference that employees of non-Middle Eastern descent were treated differently" and noted that Plaintiff had not requested leave to amend this portion of her complaint. *Id.* Regarding Masaebi's retaliation claim under Count I, the district court noted that Masaebi conceded that "reporting the feather incident does not involve any discriminatory action or practice," and that Masaebi requested leave to amend this portion of Count I to "label paragraphs 22 through 26" of the complaint, which discussed her language barrier and request for test-taking accommodations "as in connection with Count I." *Id.* at *5. The district court found that the proposed amendment would be futile because Masaebi's discussion of her language barrier and request for distraction-free test-taking conditions did not constitute "taking an overt stand against discriminatory activity" as required for a retaliation claim under Ohio law. *Id.* at *6. The district court dismissed Count I in its entirety and denied Masaebi leave to amend.

As to Count II, the district court noted Masaebi's concession that her claims under Ohio Rev. Code § 4113.52 were barred by the statute of limitations, and it addressed her request for leave to amend to allege a similar claim under Ohio common law. The district court found that

amendment of Count II would be futile because a "common-law cause of action is not available to employees terminated for whistleblowing," and Plaintiff otherwise "identifies no specific public policy which her termination puts in jeopardy" as required for retaliation claims under Ohio common law. *Id.* at *7.

The district court dismissed Count III based on Masaebi's concession that she would not continue to pursue her intentional infliction of emotional distress claim.

On appeal, Masaebi argues: (1) the district court erred in finding that she had not alleged sufficient facts to support a claim for national-origin discrimination and retaliation under Ohio Rev. Code § 4112; and (2) the district court erred in denying Masaebi leave to amend the allegations in Count I. Masaebi does not appeal the district court's dismissal of Counts II and III, nor the district court's denial of leave to amend Count II.

## II.

"We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451 (6th Cir. 2003)). We must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *See Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

A plaintiff is required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This Court "review[s] the denial of a motion to amend under the abuse-of-discretion standard, 'unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo.'" *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008)).

Masaebi argues that the district court erred in finding that her complaint failed to state a claim for national-origin discrimination under Ohio Rev. Code § 4112. Ohio Rev. Code § 4112.02 makes it unlawful for "any employer, because of the . . . national origin . . . of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable in cases involving alleged violations" of Ohio Rev. Code § 4112, and "[t]he starting point for judicial inquiry into complaints alleging disparate treatment" is *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Under *McDonnell Douglas*, a prima facie case of discrimination requires a showing that the plaintiff: (1) is a member of a protected class; (2) was qualified for her job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). As the

district court noted in its opinion, the prima facie case under *McDonnell Douglas* is an evidentiary standard applicable at summary judgment or trial, not a pleading requirement. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002).

Masaebi argues that her complaint set forth sufficient factual allegations to survive a motion to dismiss under the *Twombly/Iqbal* pleading standards and alleged all elements of a prima facie case of discrimination. First, her complaint included the fact that she was born in Iran and "emigrated to the United States many years ago," and thus she sufficiently alleged that she is a member of a protected class. Additionally, she argues that she satisfied the second *McDonnell Douglas* prong by pleading that she "believes she was terminated, at least in part, due to her manager's animus toward Middle Eastern immigrants" and that "there is nothing to suggest she was terminated for job performance issues." Appellant Br. 20. Further, Masaebi asserts that her allegations that she has a master's in business administration and that she was "making steady progress throughout her training" were adequate to satisfy the requirement that she was qualified for her position. *Id.* Finally, Masaebi argues that she adequately alleged that she was treated differently than nonprotected, similarly situated individuals because her complaint "sets forth claims that she was treated differently based on her language barrier, including that she was forced to take tests in a loud, distracting environment, despite Arby's being aware of this issue, which caused her to have to take the test again." *Id.* at 20–21.

We agree with the district court that Masaebi's complaint "contains no facts which could support an inference that employees of non-Middle Eastern descent were treated differently." *Masaebi*, 2020 WL 1275724, at *4. Masaebi complains that she was forced to take a test in a loud environment, despite requesting a silent testing-space, but what Masaebi complains of is not that she received disparate treatment, but that she was not given special treatment to accommodate her

language issues. Without an accompanying allegation suggesting that other employees' requests for accommodations were honored, this does not establish that Masaebi was treated differently based on her national origin. Moreover, Masaebi admits she was able to pass the first test when it was administered on a second occasion and was also able to pass a subsequent written test. Therefore, the district court did not err in determining that Masaebi does not sufficiently allege that employees of non-Middle Eastern descent were treated differently.

Masaebi also argues that pursuant to *Swierkiewicz*, she was not required to prove every element of a prima facie discrimination case prior to obtaining discovery. According to Masaebi, "[b]ecause the case was dismissed before any discovery could take place, she was not able to explore her [] allegations based on her beliefs to determine the level of national origin animus of her supervisors and the role it played in her ultimate termination." Appellant Br. 21. It is true that under *Swierkiewicz*, a plaintiff is not required to allege every element of a prima facie case under the *McDonnell Douglas* framework. But the fact that Masaebi need not allege every element of a prima facie case under *McDonnell Douglas* does not excuse the requirement that she allege facts supporting a plausible inference of national origin discrimination to state a claim under Ohio Rev. Code § 4112. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) ("[T]he Supreme Court established a 'plausibility' standard in *Twombly* and *Iqbal* for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims."). Thus, Masaebi was required to allege "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that Arby's terminated Masaebi or otherwise discriminated against her with respect to her employment "*because of*" her national origin. *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The district court found that Masaebi's complaint was "devoid of any facts which could produce an inference that Defendant unlawfully considered Plaintiff's national origin when conducting her training, administering her tests, or terminating her." *Masaebi*, 2020 WL 1275724, at \*4. We agree with the district court that Masaebi's complaint contained no factual allegations from which an inference of animus can be drawn, beyond the mere assertion that Plaintiff "believes she may have been terminated based on her managers' animus toward Middle Eastern immigrants." Compl. at PID 18. Masaebi provides no basis for her belief that her managers were biased against Middle Eastern immigrants, nor any facts allowing the court to infer that employment decisions, including Masaebi's firing, were motivated by her national origin. Masaebi's allegation of animus is the type of "'naked assertion[]' devoid of 'further factual enhancement'" that is prohibited under *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although dismissal on the pleadings is often inappropriate in employment discrimination cases where evidence of motive and discriminatory intent is frequently exclusively in the hands of defendants, this constitutes the rare case in which the allegations regarding discrimination were so conclusory that no plausible claim could be inferred. Thus, the district court did not err in dismissing Masaebi's national origin discrimination claim.

Masaebi's retaliation claim fails for the same reason. Under Ohio Rev. Code § 4112, it is unlawful for an employer to "discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing." Ohio Rev. Code § 4112.02(I). But Masaebi's complaint does not make any allegations that she "opposed any unlawful discriminatory practice." *Id.* Masaebi claims that her complaint alleged that she raised concerns "regarding her treatment due to the language

barrier." Appellant Br. 23. But asking to have a quiet space to take an exam due to a language barrier does not constitute opposition to an "unlawful discriminatory practice." Ohio Rev. Code § 4112.02(I). The district court correctly determined that "Plaintiff's contention that she discussed her language barrier with her supervisor is not taking an overt stand against discriminatory activity," and thus she did not meet a key requirement under Ohio law for alleging an activity subject to protection from retaliation. *See Masaebi*, 2020 WL 1275724, at *5 (quoting *Motley v. Ohio Civ. Rights Comm'n*, No. 07AP-923, 2008 Ohio App. LEXIS 1958, at *5 (Ohio Ct. App. May 13, 2008)). Masaebi not only failed to allege that she took an overt stand against discrimination; she also failed to allege that she expressed any opposition to a discriminatory practice at all. Therefore, we affirm the district court's dismissal of Masaebi's retaliation claim.

Finally, Masaebi argues that the district court abused its discretion in denying her leave to amend her allegations of retaliation.[1] But Masaebi's proposed amendments to her retaliation claim merely involved explicitly incorporating her factual allegations regarding her requests for testing accommodations due to her language barrier directly into Count I of the complaint, to replace her allegations about the alleged "ham slider incident." She did not indicate any intention to add additional facts to bolster her retaliation claim. Given that the district court examined all the facts Masaebi intended to reiterate explicitly in Count I when it analyzed the sufficiency of her retaliation claim, it was not abuse of discretion for the district court to find that such an amendment would be futile. Although a district court's discretion to deny leave to amend is "limited by Fed.R.Civ.P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims

---

[1] Masaebi did not propose specific amendments to her discrimination claim below, and the district court interpreted this to mean that Masaebi did "not request leave to amend this claim." *Masaebi*, 2020 WL 1275724, at *5. On appeal, Masaebi's argument regarding leave to amend is somewhat vague, but she does not specifically address the denial of leave to amend the discrimination claim, and thus, we assume she only challenges the denial of leave to amend the retaliation claim.

on their merits," *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987), a court need not grant leave to amend "where amendment would be 'futile,'" *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Given that Plaintiff merely requested leave to rearrange the factual allegations in the complaint, and those specific factual allegations were considered by the court when ruling on the motion to dismiss, there is no reason to believe that amendment would have made any difference. Thus, the district court did not err in denying leave to amend.

### III.

For the foregoing reasons, we AFFIRM.