NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0554n.06

Case No. 17-3212

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Oct 04, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| OLAOLUWA FAPARUSI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CASE WESTERN RESERVE UNIVERSITY, et | ) | DISTRICT OF OHIO |
| al., | ) | |
| | ) | |
| Defendants-Appellees. | | |

**O P I N I O N**

BEFORE: KEITH, ROGERS, McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Case Western Reserve University suspended sophomore student Olaoluwa Faparusi after it found he had violated the school's code of conduct by entering a women's restroom and taking photos under the stall walls. Believing the disciplinary procedures employed by the school to be constitutionally insufficient and in breach of the school handbook, Faparusi brought suit alleging Fourteenth Amendment due process violations and a state law breach of contract claim. The district court granted the defendants' motion to dismiss all of Faparusi's claims. Finding that Faparusi's claims suffer from the fatal defects identified by the district court, we affirm.

**I**

*Factual Background.* On March 1, 2016, Olaoluwa Faparusi, a male sophomore student at Case Western Reserve University ("CWRU"), was studying for his physics final at the Raymond House on the CWRU campus. R. 1, Complaint, at 4, PID 4. Taking a break from his studies, Faparusi decided to use the women's restroom. *Id.* While in one of the stalls, two female students, SV and JG-P, asked Faparusi what he was doing in the women's restroom. *Id.* Eventually, SV began accusing Faparusi of taking pictures, and requested that he delete them. *Id.* SV and JG-P left the restroom soon after this confrontation, and Faparusi followed shortly thereafter. *Id.*

Later that same day, CWRU police questioned Faparusi about the incident. *Id.* at 5, PID 5. Faparusi denied having taken any pictures, and the police found none on his phone. *Id.* Sometime after the interview, still on March 1, CWRU's Associate Vice President for Affairs and Title IX Coordinator Darnell T. Parker informed Faparusi that it was conducting an investigation in response to an incident report they received. *Id.*

On March 3, Faparusi's housing contract was terminated and Faparusi was forced to find alternative, off-campus housing. *Id.* That same day, Faparusi met with Parker regarding the incident. *Id.* at 6, PID 6. Faparusi had several similar meetings with other officials, including investigator Kimberly Scott, over the next several days. *Id.* at 6, PID 6. During that same time, CWRU officials, notably Scott, met with the complainants, SV and CP, and witness, JG-P. *Id.*

On March 15, Faparusi was informed that he would have to attend a hearing on March 18, and that the subject of the hearing was a charge of sexual exploitation. *Id.* at 8, PID 8. Faparusi claims that he was given the evidence against him less than 24 hours before the hearing was held. *Id.* The hearing was presided over by George O'Connell. *Id.* On March 21, the

University informed Faparusi that he was held liable for both sexual exploitation and disorderly conduct. *Id.* at 9, PID 9.

Faparusi appealed the decision to Louis Stark, CWRU's Vice President for Student Affairs, on March 23. *Id.* Faparusi argued that he was the victim of mistaken identification, pointing to inconsistencies in the witness accounts and investigative reports. *Id.* He also alleged that the University had wrongfully deviated from its hearing procedures, had provided inadequate notice of the disorderly conduct charge, and had not conducted an impartial investigation. *Id.* at 10, PID 10. Faparusi's appeal was denied on April 6. *Id.* As a sanction for his violations, Faparusi was suspended from school. Faparusi's lawsuit followed.

*Procedural Background.* On June 23, 2016, Faparusi, proceeding pro se, filed suit alleging due process violations under the Fourteenth Amendment and breach of contract claims under Ohio state law. He named as defendants CWRU, the hearing administrator George O'Connell, and investigator Kimberly Scott. *Id.* at 2, PID 2. He then moved for a temporary restraining order and a preliminary injunction on July 6, 2016. The matter was referred to a magistrate judge, who issued a Report and Recommendation ("R & R") recommending that Faparusi's motion be denied. R. 12, Report and Recommendation, at 2, PID 173. On November 10, 2016, the district court adopted the magistrate judge's R & R and denied Faparusi's motion. R. 17, Op. and Order, at 1, PID 268.

While Faparusi's prayer for injunctive relief was pending, on August 2, the defendants filed a motion to dismiss for failure to state a claim. R. 5, Mot. to Dismiss, at 1, PID 74. The magistrate judge also handled this motion initially, and recommended that the motion to dismiss be granted as to all claims. R. 18, Report and Recommendation, at 2, PID 273. The district

court again adopted the R & R, thereby dismissing all of Faparusi's claims, on February 28, 2017.  R. 24, Op. and Order, at 1, PID 345.  This appeal followed.

## II

### A.    Jurisdiction

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  This court has appellate jurisdiction under 28 U.S.C. § 1291, based on the district court's February 28, 2017 order granting CWRU's motion to dismiss.  Faparusi timely filed a notice of appeal on March 1, 2017.

### B.    Standard of Review

We review a district court's grant of a motion to dismiss de novo.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  We will construe all facts "in the light most favorable to the plaintiff and accept all allegations as true." *Id.*  To state a claim sufficient to survive a motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must state a claim that is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Put another way, a plaintiff must plead facts that permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### C.    Analysis

Faparusi objects to the district court's judgment on four grounds.  First, he argues that the district court failed to engage in a proper de novo review of the objected-to portions of the magistrate judge's R & R.  Second, Faparusi claims the district court erred in classifying some of his claims under Title IX rather than as standalone due process claims.  Third, he argues that the district court improperly dismissed his due process claims by concluding CWRU was not a state

actor. Fourth, and finally, Faparusi alleges the district court was wrong to dismiss his breach of contract claim. Finding each of these arguments without merit, we affirm.

### 1. Review of the Factual Record

Faparusi assigns error in the district court's failure to "to make a de novo determination of those portions of the [magistrate judge's] report to which objection is made." Appellant Br. at 17. While Faparusi is correct that the district court is required to review de novo portions of a magistrate judge's report to which an objection is made, 28 U.S.C. § 636, there is no reason to believe the district court abdicated its duty to do so here .[1]

Faparusi appears to identify three "material errors in facts and omission" in the R & R "that showed a partial review of the records" by the district court. *Id.* First, he claims the district court should have corrected the R & R's statement that Faparusi was suspended for using the women's restroom, when in fact he was suspended for allegedly taking pictures therein. *Id.* Second, Faparusi complains that the district court failed to take note of the R & R's finding that Faparusi had alleged sufficient facts to support his mistaken identity claim. *Id.* And third, Faparusi argues that the district court wrongly relied on the R & R to conclude that Faparusi knew the charges against him and had an opportunity to be heard when Faparusi was found liable for disorderly conduct without first being notified of that charge. *Id.* at 18. The district court committed no such errors.

Faparusi's first argument—that the district court failed to correct the R & R's misstatement on why Faparusi was suspended—is a pedantic one. It is true that the R & R

---

[1] It is unclear from Faparusi's brief whether the argument is that we must reverse the district court *only* for its failure to independently review the factual record after objections were made to the magistrate's report—or if the argument is that reversal is necessary because these factual errors led to analytical ones in applying the law. In any event, because we find no underlying error in the district court's review of the record, neither claim succeeds.

contains a sentence that reads in part: "Plaintiff was suspended from Case Western Reserve University for using a women's restroom at a facility . . . ." R. 18, R & R, PID 273. But in the *very next sentence*, the magistrate judge clarified: "While in a restroom stall, he was verbally confronted by two female students who accused plaintiff of taking pictures in the restroom." *Id.* As the district court found in reviewing Faparusi's objection to this portion of the R & R, that statement showed the magistrate judge "clearly considered the disciplinary action was based on the accusation that Plaintiff was taking pictures of women in the women's restroom." R. 24, Op. and Order, PID 351. Because the magistrate judge did not err in the first instance, the district court did not err by failing to clean up confusion that never existed.

Faparusi's second argument fares no better. While the argument is unclear, Faparusi seems to argue that the district court failed to give due weight to the R & R's conclusion that Faparusi had alleged facts sufficient to show he was innocent of the charges against him. *See* R. 18, R & R, PID 280. That finding in the R & R, Faparusi asserts, stands in "stark contradiction" to the district court order granting defendants' motion to dismiss for failure to state a claim. It does not. A complaint must do more than paint a plausible factual picture; it must connect those facts to a "right to relief." *Twombly*, 550 U.S. at 555. And right after the R & R states that Faparusi pleaded facts to show he was a victim of mistaken identity, the R & R concluded that those facts alone were insufficient for relief under Title IX. *See* R. 18, R & R, PID 280–83. That portion of the R & R and the district court's ultimate dismissal of Faparusi's claims were therefore consistent, not contradictory.

Finally, Faparusi claims that the district court must have haphazardly reviewed the factual record because it accepted the R & R's conclusion that Faparusi knew of the charges against him and had ample opportunity to contest them. That conclusion, Faparusi argues,

cannot be right since "the records clearly show [Faparusi] was found liable for disorderly conduct despite the fact that he was never charged with the offense." Appellant Br. at 18. The argument fails to establish reversible error.

As an initial matter, Faparusi was on notice that he was being investigated for sexual exploitation, and the factual basis for that complaint was the same basis on which the disorderly conduct charge was predicated. Furthermore, CWRU provided Faparusi with the evidence against him in advance of his hearing. These facts preclude any claim by Faparusi that he was ambushed by the subject of the hearing. And finally, it is significant that the factual predicate for the disorderly conduct finding was precisely the same as that for the sexual exploitation finding. *See* R. 3-9, CWRU Hearing Report, at 1, PID 63 (supporting both charges with fact that Faparausi used phone in the restroom to observe women in other stalls). These details combine to distinguish this case from one relied on by Faparusi, *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 604 (D. Mass. 2016), where the school "refus[ed] to provide [the student] with the specific factual conduct alleged to have given rise to the charge." That lapse by the school made it impossible for the student to defend himself—not so here.

Moreover, even if we agreed that Faparusi was treated unfairly and that the district court was wrong to conclude otherwise, there is no legal basis on which the district court could grant relief. Faparusi does not allege that inadequate notice breached any contract he had with the school, *see* Appellant Br. at 25, and a due process challenge will not lie because CWRU is not a state actor subject to due process minimums, *see infra* C.3. That is why *Fellheimer v. Middlebury Coll.*, rather than offering support for Faparusi's argument, instead confirms his claim is a fish out of water. 869 F. Supp. 238 (D. Vt. 1994). The court in *Fellheimer* said it was "fundamentally unfair" that a student was not informed by the school of one charge against

him—but only because that was such a stark "deviation from the procedures established by the College" in its own handbook. *Id.* at 246. Faparusi does not allege the same here, instead arguing that notice was *constitutionally* deficient under the due process clause.

Accordingly, we reject Faparusi's claims that the district judge improperly relied on—or failed to correct—the magistrate's recitation of the factual record.

### 2. Characterizing Faparusi's Claims

Faparusi objected to the magistrate judge's conclusion that his due process claims were in effect Title IX claims. Faparusi renews that objection on appeal, in spite of the district court's thorough analysis confirming the magistrate's reasoning. For the reasons set forth in the district court opinion, *see* R. 24, Op. and Order, at 7–9, PID 351–53, we agree that Faparusi's claims were better considered as pleaded under Title IX.

But because we find that Faparusi's claims are foreclosed no matter which law governs, we need not, and do not, belabor the dispute. Instead, as the district court did, we assume Faparusi pleaded "straight Fourteenth Amendment Due Process Violation claims," as he now argues on appeal, and hold that "dismissal would still be appropriate for a number of reasons." *Id.* at 9, PID 353.

### 3. Due Process Claims

The district court held that Faparusi's due process claims (Counts One, Two, Three, and Five) would fail for either of two reasons: first, Faparusi failed to bring them under 42 U.S.C. § 1983; and second, CWRU was not a state actor constrained by constitutional due process minimums. *Id.* We review the district court's determination de novo, taking Faparusi's allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). In light of the requirement to liberally construe Faparusi's pro se complaint, we assume that his due process

claims were properly brought under § 1983. Yet we nevertheless affirm for Faparusi's failure to show that CWRU was a state actor susceptible to due process challenges.

The Fourteenth Amendment's due process guarantees are "triggered only in the presence of state action." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). While this typically forecloses constitutional claims against private actors, "a private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Id.* We have used three tests in determining whether private action can be fairly attributed to the state: "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." *Id.*

No matter the test, the result is the same: Faparusi's claim fails. That is because Faparusi does not bother to allege *any* facts that would establish CWRU as a state actor in this case. The district court's review of Faparusi's complaint found that Faparusi "asserted no facts supporting his allegation that Case Western acted under color of state law other than simply reciting the legal conclusion that Case Western acted under color of law." R. 24, Op. and Order, at 11, PID 355. Our review of the complaint—and Faparusi's arguments on appeal—compels the same conclusion.

We start with the complaint. Faparusi asserts, "At all time[s] relevant, Defendants acted under color of state law to enforce the requirements of Title IX." R. 1, Complaint, at 3, PID 3. Beyond this conclusory statement, we can find no other facts alleged in the complaint that might be read to suggest state action under the public function, state compulsion, or nexus tests. Perhaps we could forgive the complaint for these shortcomings, given that it was filed without the assistance of counsel. But we cannot so easily excuse the same omissions in Faparusi's brief on appeal. Even after the district court highlighted this failure, *see* R. 24, Op. and Order, at 11,

PID 355, nowhere in Faparusi's brief does he explain why this court should find CWRU acted under the color of state law.

That leaves only Faparusi's allegation that CWRU acted under the color of state law by enforcing Title IX. This by itself would ordinarily be insufficient under *Iqbal-Twombly* pleading standards to establish CWRU as a state actor. But even if we did Faparusi's work for him, it is hard to imagine how the argument would work. Faparusi must first contend with the oddity that, according to him, his claim for relief has nothing to do with Title IX—and yet he urges us to find that CWRU is a state actor because its investigation of Faparusi was pursuant to Title IX. That anomaly aside, a second hurdle emerges: a private entity taking action pursuant to a federal law does not thereby automatically become a state actor.

A recent federal court decision involving a separate lawsuit alleging due process violations against CWRU is instructive on this point. *See Doe v. Case W. Reserve Univ.*, No. 1:17 CV 414, 2017 WL 3840418, at *9 (N.D. Ohio Sept. 1, 2017). In *Doe*, the plaintiff did flesh out a state action argument—a creative one under the nexus test—and the court still rejected it. *Id.* The argument was that CWRU's actions with regard to the plaintiff were coerced by the federal government because CWRU feared that its failure to take action would risk de-funding penalties. *Id.* The court rejected the argument because there was no evidence that "the federal government participated in the proceedings against the plaintiff, or dictated the specific finding of responsibility in this case. Federal regulation and receipt of federal funds alone, does not convert private conduct to government or state action." *Id.* *Doe*'s Title IX-state action analysis is consonant with other federal courts facing similar questions. *Id.* at *10 (N.D. Ohio Sept. 1, 2017) ("Despite extensive research, the Court has not found a single case in which a court has determined that a private school's compliance with Title IX's regulations make that entity a state

actor for purposes of a Fourteenth Amendment due process claim, nor has Plaintiff cited any such decision."). *Doe*'s analysis is persuasive. Therefore, even with dramatically more artful pleading, Faparusi would fail to defeat defendants' state action argument.

With no showing that CWRU was a state actor, Faparusi's due process challenge must fail. This fatal flaw in Faparusi's due process argument is made clear by the very cases he relies on: they either considered private law contract challenges, not constitutional ones, based on the schools' deviation from its own disciplinary procedures, *see* Appellant Br. at 23 (citing *Fellheimer*, discussed above), or disciplinary actions by *state* universities, *see* Appellant Br. at 24 (citing *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016)). Faparusi may have his reasons to be indignant about CWRU's treatment of him. But a perception of mistreatment, even a well-founded one, does not automatically mean Faparusi has suffered a deprivation of his rights under the Constitution. We therefore affirm the district court's dismissal of Faparusi's Fourteenth Amendment due process claims in Counts One, Two, Three, and Five.

### 4.    Breach of Contract Claim

The district court dismissed Faparusi's state law breach of contract claim (Count Four) after finding that Faparusi could not establish that CWRU breached any portion of the university handbook. R. 24, Op. and Order, at 13, PID 357. Specifically, the court said that the handbook provision Faparusi pointed to conferred a right only on the complainant in the underlying investigation, not the respondent. *Id.* While the district court was correct with respect to Page 20, paragraph 2's notice requirement, it did not dispose of Faparusi's other contractual complaint—that CWRU violated the handbook by holding *two* hearings rather than one. *See* R. 6, Opp. Mot. to Dismiss, at 11, PID 140; Appellant Br. at 26. On de novo review, we affirm the

district court's dismissal of the contract claim, but we supplement the district court's reasoning to account for this latter argument.

Ohio contract law governs this dispute. "Generally it may be stated that when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature." *Behrend v. State*, 379 N.E.2d 617, 620 (Ohio Ct. App. 1977). "Yet, at the same time, '[c]ontracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities.'" *Valente v. Univ. of Dayton*, 438 F. App'x 381, 384 (6th Cir. 2011) (quoting *Ray v. Wilmington Coll.*, 667 N.E.2d 39, 42 (Ohio Ct. App. 1995)). Accordingly, is it "well established that courts will not interfere in these matters in the absence of a clear abuse of discretion." *Schoppelrei v. Franklin Univ.*, 228 N.E.2d 334, 336 (Ohio Ct. App. 1967). In confronting challenges to private school disciplinary proceedings, the appropriate question is thus "whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard." *Pierre v. Univ. of Dayton*, 143 F. Supp. 3d 703, 713 (S.D. Ohio 2015).

The answer to that question is yes. It is true enough that the handbook provisions for the Administrative Hearing Procedure discuss "the hearing," R. 6, Opp. Mot. to Dismiss, at 11, PID 140, and Faparusi has a colorable argument that such language means "only one hearing was to be held," Appellant Br. at 26. But Faparusi's argument fails on closer inspection. For one thing, it is question-begging. It assumes without good reason that *any* contact between CWRU officials and the complainants constitutes a hearing, triggering requirements like notice to the respondent and the right of the respondent to attend. But why should we view CWRU's decision to interview the complainant in this case as a hearing within the meaning of these handbook

provisions? To the contrary, an equally (if not more) plausible interpretation of the University's meeting with complainants would be that it was part of the school's *investigation*. If that is the case, then the provisions Faparusi points to are not even applicable in the first instance.

What's more, even assuming the contact with complainants was subject to the hearing provisions, the process afforded to Faparusi as a whole was largely consistent with that outlined in the handbook. In the end, Faparusi was given notice of his hearing, provided the evidence to be used against him at the hearing, was given an opportunity to respond at the hearing, and was able to appeal the adverse decision against him. Those "proceedings fell within the range of reasonable expectations of one reading the relevant rules" in CWRU's handbook. *Pierre*, 143 F. Supp. 3d at 713. Accordingly, Faparusi's breach of contract claim cannot succeed.

**III**

For the reasons set forth above, we affirm the district court's dismissal of all five of Faparusi's claims.