RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JOHN DOE,

>    *Plaintiff-Appellant*,

>    *v.*

>    No. 20-3482

OBERLIN COLLEGE; OBERLIN COLLEGE BOARD OF
TRUSTEES; REBECCA MOSELY; OBERLIN COLLEGE
DOES 1–5 DESIGNATED REPORTING REPRESENTATIVES
and 6–10 DESIGNATED TITLE IX INVESTIGATORS,

>    *Defendants-Appellees*.

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cv-00669—Dan A. Polster, District Judge.

Argued:  February 2, 2022

Decided and Filed:  February 14, 2023

Before:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Brian A. Murray, ZUKERMAN, LEAR & MURRAY, CO., L.P.A., Cleveland, Ohio, for Appellant.  David H. Wallace, TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Brian A. Murray, Larry W. Zukerman, S. Michael Lear, Adam M. Brown, ZUKERMAN, LEAR & MURRAY, CO., L.P.A., Cleveland, Ohio, for Appellant.  David H. Wallace, TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, for Appellees.

STRANCH, J., delivered the opinion of the court in which WHITE, J., joined in full. SUHRHEINRICH, J. (pp. 16–18), delivered a separate opinion concurring in part, dissenting in part, and concurring in the judgment.

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge. John Doe sued Oberlin College, the Oberlin College Board of Trustees, the College's Title IX Coordinator Rebecca Mosely, and ten unnamed Oberlin College Defendants (collectively, Oberlin) in Ohio state court during the Title IX office's ongoing investigation into a fellow student's sexual misconduct accusation against him. In addition to state common law claims, Doe alleged that the investigation violated federal due process and Title IX. After removal to federal court, the district court sua sponte dismissed the federal due process claim with prejudice and dismissed the remaining claims without prejudice. Doe filed this timely appeal.

Although the district court did not follow the appropriate process for an on-the-merits, sua sponte dismissal of Doe's federal due process claim, Oberlin is not a state actor subject to federal due process requirements. Dismissal on the merits was therefore proper, and we AFFIRM. Regarding Doe's remaining claims, the district court was correct to dismiss them for lack of ripeness, but subsequent factual developments have ripened the claims on appeal. We REMAND those remaining claims to the district court for further proceedings consistent with this opinion.

**I. BACKGROUND**

**A. Oberlin College's Title IX Resolution Process**

Like all colleges and universities receiving federal funds, Oberlin College must comply with Title IX, 20 U.S.C. §§ 1681–1688. To fulfill its statutory obligations, Oberlin has a Sexual Misconduct Policy setting out how it will investigate and discipline students for sexual harassment, sexual assault, and other sexual misconduct. Under the Policy, Oberlin's Title IX team initially assesses Title IX complaints to determine which path to resolution—informal or formal—is best. The Policy states:

> Participation in informal resolution is voluntary for all parties, and a Reporting
> Party can request to end informal resolution at any time. At that time, the report

may be referred for formal resolution. Factors that will shape the Title IX Team's recommendation will include the nature of the report, the Reporting Party's stated preference, and relevant evidence about patterns of conduct.

(R. 5-2, Oberlin College Sexual Misconduct Policy, PageID 563). Informal resolution "includes the identification of remedies to stop the sexual misconduct, address its effects, and prevent its recurrence," but "does not involve disciplinary action against" the accused student. (*Id.*, PageID 558). A formal resolution process, in contrast, involves an assigned investigator who prepares a written report for the Title IX coordinator and a hearing coordinator. The hearing coordinator then determines if there are sufficient facts on which a hearing administrator or body could find a Policy violation. If this necessary threshold is met, the hearing coordinator informs both parties and refers the report for further resolution procedures. Disciplinary action for an allegation of sexual misconduct is possible only through a formal resolution procedure, and only if either the accused student accepts responsibility or a hearing panel of trained staff members reaches a finding of responsibility.

The Policy also outlines protections for both the reporting and responding parties. Parties in formal proceedings have procedural guarantees, including timely access to documents to be used at a formal hearing, the right to present witnesses, and the opportunity to give the hearing body questions for witnesses. In addition, the Policy includes a Privacy Statement, instructing that:

> In any report, investigation, or resolution of an allegation of sexual and/or gender-based harassment, discrimination and violence, including sexual violence, stalking, and intimate partner violence, every effort will be made to protect the privacy and confidentiality interests of the individuals involved in a manner consistent with the need for a thorough review of the allegation and the protection of the parties involved and the broader campus community.

(*Id.*, PageID 525). Parties who "retaliate in any way against a student or employee because they have brought forward or been the subject of allegations" are in violation of the Policy, and "[t]he College will take immediate and responsive action to any report of retaliation." (*Id.*).

**B. Oberlin's Title IX Investigation into a Complaint Against John Doe**

Title IX procedures began during Doe's sophomore year at Oberlin.[1] On December 12, 2019, Jane Roe, another Oberlin sophomore, reported to Deputy Title IX Coordinator Erica Rau that she believed two of her sexual encounters with Doe amounted to sexual misconduct. Rau passed the allegation up the Title IX chain of command to Oberlin's Title IX Coordinator, Rebecca Mosely. At Roe's request, neither Rau nor Mosely informed Doe of the allegations against him until February 4, 2020, when Rau emailed Doe to inform him of the complaint. During those intervening weeks, Oberlin did not investigate the matter. According to Doe, this lack of investigation resulted in a failure to preserve exculpatory security-camera footage.

Jane Roe met with Mosely on February 10, providing a more detailed statement about her allegations against Doe. As of that date, Doe did not know when the alleged sexual misconduct occurred, where Oberlin was in its investigation and complaint process, or how Oberlin planned to handle the investigation. Doe alleges that this dearth of information led him to hire a private investigator who went to Oberlin's campus on February 10 to interview witnesses—including Roe—and gather information. Doe alleges Roe allowed the investigator into her room for an interview during which Roe said she planned to use the College's informal Title IX resolution process.

On February 18, Doe's counsel informed Mosely that Doe also desired to use the informal resolution process but was frustrated that the delayed notice of the allegations resulted in the loss of exculpatory evidence. Counsel further stated that Doe had learned that Roe had disclosed the existence of the Title IX complaint to other Oberlin students. Doe requested that Oberlin "take any and all measures available" to protect his privacy, including informing Roe that she must stop discussing the allegations and proceedings.

On February 24 and 25, Doe and Mosely discussed the investigation over the phone and in-person, respectively. Doe was officially told that Roe had requested an informal resolution of her report, which would not include further investigation, but would require additional Title IX

---

[1]Because this appeal reaches us following dismissal of the amended complaint, we accept all Doe's non-conclusory allegations as true in our recitation of the facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

education and an ongoing no-contact order between the parties.  Mosely explained that because the Policy allows the reporting party to decide when to begin an informal or formal resolution process, Oberlin had not immediately notified Doe of the allegations or investigated the allegations after the December 12, 2019 report.

On February 26, Mosely emailed Doe that Roe had decided, in a follow-up meeting with Mosely, to pursue a formal resolution of her allegations.  Doe emailed Mosely on March 2 with concerns about the Title IX process so far.  He asserted a formal retaliation complaint against Roe, claiming that the change to a formal resolution process violated the Sexual Misconduct Policy's Statement Against Retaliation because he perceived it to be "prompted by [Doe's] complaint that [Roe] was slandering [him] to other Oberlin College students."  (*Id.* ¶ 236, PageID 492).  He further argued that the "College was complicit with [Jane Roe] in deciding to withhold notification of the report" for several weeks such that he would be denied access to exculpatory evidence.  (*Id.* ¶ 232, PageID 491).

On March 3, Erin Butcher, a consultant hired by the College to independently investigate Roe's claims pursuant to the Policy, requested a meeting with Doe and his counsel.  In his March 4 response, Doe requested immediate production of the complaint against him with details on the date, time, and location of the alleged incident; electronically stored exculpatory evidence; and exculpatory content from Roe's cell phone.  Doe's counsel followed with another email "demand letter" on March 5, reiterating the earlier requests and setting out specific questions about the status of the investigation.  Mosely provided the requested reports and complaints to Doe and his counsel on March 6.  Butcher responded to Doe and his counsel about the status of the investigation on March 9.  She stated that she was interviewing witnesses and gathering information but would provide the parties a draft report when her initial investigation was complete.  Butcher explained that the parties then could respond to the report and continue resolution procedures as necessary.  She also told Doe that she did not believe Oberlin was "opening a complaint by [Doe] against [Jane Roe] for filing a false claim or retaliation."  (R. 5-16, Email from Butcher, PageID 675).  Butcher stated that she understood Roe to have switched her preference to a formal resolution process not in response to Doe's complaint against her for discussing the Title IX investigation with other students, but instead because Roe viewed Doe's

hiring of a private investigator and attorneys as a sign that he was not taking "steps towards mutual resolution." (*Id.*, PageID 675–76).

Doe filed this lawsuit and request for a temporary restraining order and preliminary injunction in state court on March 20, 2020, less than two months after first learning of Roe's complaint and before any formal hearing process had begun. Doe brought claims for violations of federal due process, violations of Title IX, and violations of several state tort laws. (**Id.**) On July 2, Oberlin officially concluded the proceedings against Doe, finding that he had not violated the Sexual Misconduct Policy.

## C. Procedural History

On March 30, 2020, Oberlin removed Doe's state court case to federal court, and the district court held a telephone conference with counsel for both parties. The court stated that it was denying Doe's motion for a temporary restraining order and dismissing his complaint without prejudice because Oberlin's investigation had not finished, but the court did not enter a formal ruling on the docket sheet. On April 1, Doe filed a motion for reconsideration and requested leave to file an amended complaint "for the limited purpose of asserting additional facts" in support of the court's diversity jurisdiction over Doe's state law claims. The district court granted Doe's motion to file the amended complaint.

The motion for reconsideration prompted the court to hold another telephone conference on April 2. During that call, Oberlin's counsel argued that the court should dismiss Doe's § 1983 claim as non-cognizable because Oberlin is a private college and not a state actor subject to federal due process requirements. Doe's counsel offered to brief the issue, asserting that Oberlin could be considered a state actor because of its receipt of state and federal funding. After questioning the parties, the district court announced its agreement with Oberlin that the college was not a state actor. Without providing further opportunity for briefing or amendment, the court denied the motion for a temporary restraining order and dismissed the § 1983 claim on the merits with prejudice and the remaining Title IX and state law claims without prejudice as premature. The court later issued a short written order summarizing its decision.

Doe timely appealed. We denied Oberlin's motion to dismiss the appeal as moot, reasoning that there is still a live controversy because Doe seeks damages based on the College's decision to conduct a Title IX investigation against him. *Doe v. Oberlin Coll.*, No. 20-3482 (6th Cir. July 29, 2021) (order). We now consider whether the complaint was appropriately dismissed.

## II.  ANALYSIS

Pursuant to 28 U.S.C. § 1291, we have jurisdiction over a sua sponte dismissal of a complaint as a final decision, and we review that dismissal under an abuse of discretion standard. *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). To the extent that legal conclusions are intertwined with the dismissal or denial of Doe's request for injunctive relief, however, we review those conclusions de novo. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007). We review a decision to dismiss for lack of ripeness de novo. *See Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010).

### A.  The Sua Sponte Dismissal of Doe's 42 U.S.C. § 1983 Claim on the Merits

Our precedent disfavors sua sponte dismissals of complaints on the merits. In *Tingler v. Marshall*, we laid out a five-part test for assessing whether a district court followed the proper procedure in such a dismissal. 716 F.2d 1109, 1112 (6th Cir. 1986). A district court must:

> (1) allow service of the complaint upon the defendant; (2) notify all parties of its intent to dismiss the complaint; (3) give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal; (4) give the defendant a chance to respond or file an answer or motions; and (5) if the claim is dismissed, state its reasons for the dismissal.

*Id.*; *see Est. of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 396 (6th Cir. 2015). The holding in *Tingler* is narrow, focused exclusively on sua sponte dismissals on the merits. *See Morrison v. Tomano*, 755 F.2d 515, 516 (6th Cir. 1985). The underlying goal is to provide both parties "notice and an effective opportunity to respond." *Catz v. Chalker*, 142 F.3d 279, 286 (6th Cir. 1998), *overruled on other grounds by Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir.

2006).  However, sua sponte dismissal on the merits when the merits question "is purely a legal question not requiring the development of a factual record" is less problematic.  *See id.* at 285.

1. Sufficiency of Notice and Opportunity to Respond

Two issues arise with the district court's sua sponte dismissal of Doe's § 1983 due process claim.  The first is whether the district court provided Doe with adequate notice that it was planning to dismiss the federal due process claim on the merits.  "[A] district court's notice of its intent to dismiss *sua sponte* should be unmistakable (whether oral or written), and should specify a date by which the parties must respond to the court's motion, giving them reasonable time under the circumstances to do so."  *Id.* at 286 (citing *United Brotherhood of Carpenters & Joiners of Am. v. Ohio Carpenters Health & Welfare Fund*, 926 F.2d 550, 552, 557–78 (6th Cir. 1991)).  Here, the record does not show Doe had notice that the district court planned to dismiss the federal due process claim based on the court's conclusion that Oberlin is not a state actor. There is no transcript or record of the March 30, 2020 telephone conference during which the district court expressed its intent to dismiss the complaint.  The only record evidence of that intention is the court's statement on the April 2, 2020 call that "[t]he defendant raised [the argument] last time, that Oberlin is a private college so they are not a state actor." (R. 12, Apr. 2 Hearing Tr., PageID 708).  This aside explaining that *Oberlin* previously raised the state-actor argument is not sufficient evidence that the *district court* provided an "unmistakable" signal that it planned to dismiss the federal due process claim on those grounds.  *See Catz*, 142 F.3d at 286. Indeed, the court's opinion states that during the first telephone conference, it announced its intention to dismiss the case without prejudice and deny the motion for a temporary restraining order.  That the district court stated a plan to dismiss the entire case without prejudice belies Oberlin's argument that Doe had notice of the court's intention to sua sponte dismiss the federal due process claim on the merits and with prejudice.

Second, the court did not give Doe a sufficient opportunity either to respond to the notice of dismissal or to amend his complaint.  Oberlin insists that the court complied with *Tingler* because Doe filed an amended complaint and responded to the district court's notice of dismissal before the court entered the order.  This argument misunderstands the *Tingler* standard. Although Doe did file an amended complaint after learning of the district court's intention to

dismiss the original complaint, he did so "for the limited purpose" of asserting facts that would support diversity jurisdiction.  (R. 5).  Doe could not have amended the complaint in response to the state-actor issue because nothing in the record supports that the district court gave him notice of its plan to dismiss the due process claim on that ground.  *Cf. Andreano v. City of Westlake*, 136 F. App'x 865, 874 (6th Cir. 2005) (holding that a district court did not comply with *Tingler* because, although there was a prior motion to dismiss, the sua sponte dismissal included a substantive claim that was not discussed in that earlier motion).  Because we require the district court to give a plaintiff notice of the specific grounds for a planned sua sponte dismissal on the merits, this record indicates that Doe's opportunity to amend or respond after the initial notice was insufficient.

Moreover, the limited time between the district court's notice of intent to dismiss the case sua sponte and the actual dismissal supports Doe's assertion that he was denied the proper procedural safeguards.  While we have not identified a particular amount of time required, and we need not do so now, we have instructed that a district court planning to dismiss a complaint sua sponte on the merits must provide the plaintiff with a specific time by which to respond to the court's concerns or to amend the complaint.  *Catz*, 142 F.3d at 286.  The record here offers no indication that Doe was provided such a timeline.  Without an explicit opportunity to respond or to amend the complaint based on the known intention of the district court, *Tingler* was not satisfied.

## 2.  The State Actor Issue

That the district court's sua sponte dismissal amounted to a *Tingler* error, however, does not necessitate a remand.  In some circumstances we may proceed to the merits.  *See, e.g.*, *id.* at 286–87; *Salibra v. Sup. Ct. of Ohio*, 730 F.2d 1059, 1062 (6th Cir. 1984).  Because we can affirm on any ground, *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003), we consider whether the dismissal of the federal due process claim was nevertheless justified, *see Andreano*, 136 F. App'x at 874.

Normally, deciding the issue as a matter of law on this record would be premature.  In *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, the Supreme Court stated

that identifying whether an organization is a state actor for the purposes of a particular decision is a "necessarily fact-bound inquiry." 531 U.S. 288, 298 (2001) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)). The record here, however, is sufficient for our review at this stage. Although Doe contests whether he was aware of the district court's plan to dismiss the federal due process claim on the merits, Oberlin made the state-actor argument before Doe filed his amended complaint. Doe also argues that his amended complaint alleges specific, unique facts distinct from those alleged in the cases concluding that private schools are not state actors for federal due process purposes. On this record and given the clear case law on the state-actor status of private colleges and universities, we proceed to the merits.

There are three tests for state action. *Brentwood Academy* held that courts may attribute state action to a nominally private actor's activity that "results from the State's exercise of 'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity with the State or its agents.'" *Id.* at 296 (citations omitted) (first quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); then quoting *id.*; and then quoting *Lugar*, 457 U.S. at 941); *see also Faparusi v. Case W. Rsrv. Univ.*, 711 F. App'x 269, 275 (6th Cir. 2017) (defining the three tests as the public function, state compulsion, and nexus tests). In *Faparusi v. Case Western Reserve University*, we explained that a plaintiff cannot adequately claim that a university is a state actor based solely on the fact that the university investigated the plaintiff pursuant to Title IX, a federal law. 711 F. App'x at 276. The risk of losing federal funding is also insufficient to support state action. *Id.* (citing *Doe v. Case W. Rsrv. Univ.*, No. 1:17-cv-414, 2017 WL 3840418, at *9 (N.D. Ohio Sept. 1, 2017)). Without "evidence that 'the federal government participated in the proceedings against the plaintiff, or dictated the specific finding of responsibility in th[e] case,'" the private university's conduct was not state action. *Id.* (quoting *Case W. Rsrv. Univ.*, 2017 WL 3840418, at *9). The weight of case law, both within and outside the Sixth Circuit, concludes that private colleges are not transformed into state actors while conducting Title IX investigations. *See, e.g.*, *id.* at 275; *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1188 (10th Cir. 2020); *see also Case W. Rsrv. Univ.*, 2017 WL 3840418, at *10 (collecting cases).

Doe's allegations neither satisfy any of the state-actor tests nor overcome the persuasive case law from our sister circuits. Doe asserts a "close nexus" exists between Oberlin and the State of Ohio because Oberlin can investigate, discipline, and sanction students that it determines committed sexual misconduct, which are powers usually reserved to state actors. Doe further contends that state and federal officials have used their coercive power—specifically the threat of lost federal funding—to influence Oberlin to impose unconstitutional procedures like rapid and harsh Title IX investigations that discriminate against male students. According to Doe, the investigation of the U.S. Department of Education's Office for Civil Rights into Oberlin's Title IX policies and procedures led to significant media scrutiny. In turn, this scrutiny compelled Oberlin to be more aggressive in its investigations and adjudications of sexual misconduct complaints against men. He points to allegations in the amended complaint that as of 2016, every formally resolved case resulted in a finding of responsibility for at least one charge. But Doe's allegations are practically identical to those that we have previously rejected as insufficient to show that a private university is a state actor. Each allegation of Oberlin's state-actor status is intimately intertwined with a college's obligation under Title IX to investigate allegations of sexual misconduct and the federal government's power to punish non-compliant colleges with the withdrawal of federal funds. *See, e.g.*, *Faparusi*, 711 F. App'x at 275–76. At core, Doe's allegations of federal pressure would be true in virtually every Title IX proceeding. Moreover, Doe's amended complaint makes no allegation of specific federal pressure on Oberlin in his case that amounted to state action. *Cf. Logan v. Bennington Coll. Corp.*, 72 F.3d 1017, 1027–28 (2d Cir. 1995) (concluding that a private college's creation of a sexual harassment policy at the urging of a state commission did not make the private college's firing of a professor a state action because the commission was not involved in the specific case). Doe does not offer a reason to deviate from our prior decisions here.

Doe instead points to *Doe v. Case Western Reserve University*, 809 F. App'x 276 (6th Cir. 2020), as evidence that the Sixth Circuit has not explained how due process rights apply to private universities' Title IX proceedings. But that case did not involve a due process claim, *id.* at 279, nor did it reconsider *Faparusi*'s conclusion that "[f]ederal regulation and receipt of federal funds alone, does not convert private conduct to government or state action," *Faparusi*, 711 F. App'x at 276 (quoting *Case W. Rsrv. Univ.*, 2017 WL 3840418, at *9).

Allowing Doe to make additional amendments to his complaint to respond further to Oberlin's state-actor argument would be futile. *See Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017). We affirm the dismissal of Doe's federal due process claim on the merits.

## B. Doe's Remaining State and Federal Claims

A separate *Tingler* analysis is not necessary for Doe's other claims—violation of Title IX (erroneous outcome), violation of Title IX (selective enforcement), breach of contract, breach of the covenant of good faith and fair dealing, negligence, and promissory estoppel—because the district court did not dismiss them on the merits. *See, e.g.*, *Morrison*, 755 F.2d at 516. Instead, Doe's remaining claims were dismissed without prejudice as "premature." (R. 6, PageID 692). We construe the decision as a dismissal for lack of ripeness.

Ripeness "is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Typically, unripe claims raise a jurisdictional issue, meaning that "federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (quoting *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). "A claim is ripe where it is 'fit for judicial decision' and where 'withholding court consideration' will cause hardship to the parties." *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 153 (1967)). The doctrine embodies a policy against the federal courts "'entangl[ing]' themselves 'in abstract disagreements'" through premature adjudication. *Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (quoting *Abbott Labs.*, 387 U.S. at 148). We consider three factors to determine a claim's ripeness: (1) the likelihood of the alleged harm; (2) the sufficiency of the factual record "to produce a fair adjudication of the merits of the parties' respective claims"; and (3) the resulting "hardship to the parties if judicial relief is denied at this stage in the proceedings." *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 612 (6th Cir. 2008)). These factors get at the underlying goal of ensuring a claim is "fit for judicial resolution." *Abbott Labs.*, 387 U.S. at 153.

Doe first alleges a Title IX claim under the theory of "erroneous outcome," which requires factual allegations "sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and a specific "causal connection between the flawed outcome and gender bias." *Doe v. Mia. Univ.*, 882 F.3d 579, 592 (6th Cir. 2018) (quoting *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016)). When Doe filed his amended complaint, Oberlin had yet to complete its investigation, let alone begin any hearing process. A formal hearing is necessary for Oberlin to find a violation of its Policy and to impose a disciplinary action, but at the time of Doe's amended complaint, there was no outcome to challenge. Doe's effort to frame the "erroneous outcome" at issue as Oberlin's decision to proceed with a formal resolution process does not change this analysis. That was an interim decision on the proper procedural path, not a final decision like those reviewed in all our prior erroneous outcome decisions. *Cf., e.g.*, *Doe v. Baum*, 903 F.3d 575, 580, 585–86 (6th Cir. 2018); *Mia. Univ.*, 882 F.3d at 585–88. By the time of this appeal, Oberlin had made a final decision; it closed the investigation in Doe's favor, finding no violation of any sexual misconduct policy. Because "it is the situation now rather than the situation at the time of the District Court's decision that must govern," *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974), Doe's erroneous outcome claim has transitioned from being unripe before the district court to being moot before this court.

To prevail on his selective enforcement claim, Doe "must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Doe v. Univ. of Dayton*, 766 F. App'x 275, 284 (6th Cir. 2019) (quoting *Cummins*, 662 F. App'x at 452). Critical to such a claim is evidence that gender bias motivated the selective enforcement. *See Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003). We have analogized this claim to Title VII disparate treatment claims, in which a plaintiff must show that all relevant aspects of his situation are "nearly identical" to those of the female alleged to be treated more favorably. *Id.* (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Doe alleges that Oberlin selectively enforced Title IX against him by refusing to investigate his retaliation complaint against Roe. He also claims selective enforcement based on Oberlin's decision to investigate Roe's Title IX complaint against him for sexual contact with Roe while she was intoxicated, but not to investigate whether Roe violated the same policy in her

sexual contact with Doe, who was allegedly also intoxicated. Doe, however, does not allege that he ever filed a Title IX complaint against Roe for this conduct. Based on these actions, Doe claims that he sustained emotional distress, lost educational and career opportunities, and suffered reputational and economic damages.

The amended complaint offers few factual allegations to support these alleged damages. This underscores the broader concern of the second ripeness factor that greater factual development was necessary at the time the amended complaint was filed. "Claims are fit for review if they present 'purely legal' issues that 'will not be clarified by further factual development.'" *Hill*, 878 F.3d at 213–14 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1981)). Federal courts cannot consider claims depending on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Warshak v. United States*, 532 F.3d 521, 526 (6th Cir. 2008) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Doe filed his complaint less than a month after Butcher—a hired investigator, not an employee of the university—told him of her impression that Oberlin had no plans to open a retaliation investigation into Roe. Even assuming that Doe's factual allegations are sufficient to state a claim, there was no certainty about what action Oberlin would take on Doe's retaliation claim. After all, as Doe alleges, Oberlin took almost two months to officially begin its investigation into Roe's Title IX complaint. As of the amended complaint's filing, there was a possibility that Oberlin could have opened an investigation into the retaliation complaint against Roe. Under these circumstances, the district court was correct to dismiss the selective enforcement claim on ripeness grounds. But as noted above, since the filing of the amended complaint, we have learned that Oberlin closed its investigation into the incidents involving Doe and Roe. The questions undermining the ripeness of Doe's selective enforcement claims at filing have been answered. The same is true of Doe's state-law claims. Based on the lack of a record before us given the district court's sua sponte dismissal, we express no opinion on the validity of these claims; rather, we find only that the issues are now ripe and remand the case to the district court for further proceedings. *Blanchette*, 419 U.S. at 140 n.25.

## III.  CONCLUSION

Based on the above analysis, we AFFIRM the dismissal of Doe's federal due process claim on the merits and REMAND Doe's remaining claims to the district court for further proceedings consistent with this opinion.

---

**CONCURRING IN PART, DISSENTING IN PART,**
**and CONCURRING IN THE JUDGMENT**

---

SUHRHEINRICH, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment.

I agree that the district court's sua sponte, merits-based dismissal of Doe's procedural due process claim was error. The court dismissed a claim alleging a lack of due process without providing the minimal process that was due; the irony of that speaks for itself. And, like the majority, I too would affirm that dismissal, but I would do so on a separate (and jurisdictional) ground: that Doe lacks Article III standing. I otherwise join the majority's opinion.

Since our power extends only to cases and controversies, which exist only where plaintiffs have standing, we are duty-bound to address standing before any merits-based question (like state action). *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). An opinion that does otherwise is merely advisory. *See id.* To establish standing, Doe must allege facts showing that he suffered a concrete, particularized, and cognizable injury that's fairly traceable to the named defendants and likely redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Doe fails to show injury and traceability for his procedural due process claim. The crux of this claim is that he was deprived of exculpatory evidence in the months while Oberlin's Title IX investigation was proceeding informally, which prejudiced him when the investigation switched to formal. Even assuming that Oberlin is a state actor, however, Doe was not entitled to any constitutional protection during those informal proceedings. That's because no property or liberty interest is implicated by a Title IX investigation unless the investigation may result in at least the student's suspension. *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (explaining that due process must be given "before issuing significant disciplinary decisions"). And, at Oberlin, informal resolution results *at most* in counseling and education, not suspension or any other discipline.

By the time a potential suspension was in play here—*i.e.*, when Roe decided to pursue a formal, rather than informal, resolution process—we can assume that Doe had an interest in preserving and accessing exculpatory evidence. Because the proceedings against Doe remained informal for months before switching to formal, Doe was deprived access to, and was not able to preserve, exculpatory evidence in the meantime. Although that was certainly problematic, any injury Doe suffered from that delay is now effectively moot: The formal process *exonerated* Doe, and Oberlin represents that his academic transcripts will never reference these proceedings, so whether he was deprived of exculpatory evidence is immaterial now. At the very least, any harm owing to the initial, informal proceedings "w[as] cured" after the later, formal proceedings played out in Doe's favor. *Doe v. Cummins*, 662 F. App'x 437, 447 (6th Cir. 2016).

Just as importantly, Doe offers little to no argument here (or in the amended complaint) as to how the formal resolution process deprived him of due process. His main complaint is that he was prejudiced by the proceedings switching from informal to formal, but (as noted) his property and liberty interests were implicated only once formal resolution began. His other complaints about the formal process rely on hypothetical applications of the Policy, rather than explaining how the Policy *was applied* against him unfairly; he argues only that the Policy "failed to *guarantee* . . . that he would have the rights to a live hearing, to cross-examine his accuser and other witnesses' [sic] against him"—not that he was *actually* deprived of those protections during his formal proceedings, even if the Policy did not guarantee them. Pl. Br., p. 47 (emphasis added). Without more specifics, any procedural injury he suffered from the formal resolution process boils down to nothing more than an abstract facial attack on the Policy itself.

To the extent that Doe claims reputational injury, rather than an interest in access to exculpatory evidence, there are at least two problems. First, the reputational injury—as far as it's traceable to any defendant here (only the Oberlin defendants)—is subsumed within his selective-enforcement claim. That claim alleges that Oberlin selectively enforced the Policy only against Doe by not investigating his claim that Roe disclosed her allegations to other students, a disclosure that allegedly violated the Policy. By not investigating this claim, Doe says, Oberlin wielded a heavy hand against him but not Roe. That may be true, but any injury that Doe thereby suffered cannot form the basis of his procedural due process claim, since the

claims would duplicate each other.  Holding otherwise blurs the lines much too much and would mean that any Title IX selective-enforcement claim also gives rise to a procedural due process claim.

Second, any other way that the reputational injury is sliced, it's fairly traceable only to Roe (because she was the one who harmed Doe's reputation by sharing the allegations with other students).  But she is not a party here, and her actions are not attributable to any Oberlin defendant who *is* here.  Indeed, Oberlin's Policy forbids such disclosure, and Doe does not allege that any Oberlin defendant violated the Policy, other than by selectively enforcing it.  Hence, Doe's alleged reputational injury cannot form the basis of his procedural due process claim against these defendants.

Doe also hints, in passing, that his injuries are the inconveniencies, economic costs, and emotional suffering that came from defending Roe's accusation.  I do not doubt those injuries, but they come from defending any accusation of wrongdoing.  Oberlin, all agree, has a duty under Title IX to investigate any credible accusation of sexual assault; and Doe alleges nothing to suggest that Roe's accusation was "substantially false" in a way that would've made Oberlin's investigation of it baseless or frivolous.  *See Codd v. Velger*, 429 U.S. 624, 944 (1977) (per curiam).  Without that, Doe cannot claim that being subjected to the formal resolution process itself, absent a preliminary hearing to evaluate Roe's accusation before the formal resolution process began, deprived him of due process.  *See Rector v. City & Cnty. of Denver*, 348 F.3d 935, 944 (10th Cir. 2003) ("*Codd* thus establishes that failure to provide a hearing does not violate due process so long as the claimant does not contest the legitimacy of the underlying deprivation.").

I therefore concur in the judgment as to Doe's due process claim, and otherwise join the majority's opinion.